**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDWIN YINGLING<br>324 N 6th Ave<br>Altoona, PA 16601 | : | CIVIL ACTION<br>No. |
| | : | |
| CHRISTIE YINGLING<br>324 N 6th Ave<br>Altoona, PA 16601 | : | TRIAL BY JURY DEMANDED |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| BLAIR COUNTY<br>419 Market Square Aly<br>Hollidaysburg, PA 16648 | : | |
| | : | |
| JOHN DOE CORRECTIONS OFFICERS<br>419 Market Square Aly<br>Hollidaysburg, PA 16648 | : | |
| | : | |
| PRIMECARE MEDICAL, INC.<br>419 Market Square Aly<br>Hollidaysburg, PA 16648 | : | |
| | : | |
| JOHN DOE MEDICAL DIRECTOR<br>419 Market Square Aly<br>Hollidaysburg, PA 16648 | : | |
| | : | |
| & | : | |
| | : | |
| JOHN DOE MEDICAL PROVIDER<br>419 Market Square Aly<br>Hollidaysburg, PA 16648 | : | |
| | : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiffs, Edwin Yingling and wife, by and through their attorneys, Brian Zeiger, Esq.,

and Laura Zipin, Esq., hereby allege the following:

1

**PARTIES**

1.      At all times relevant hereto, Plaintiff Edwin T. Yingling ("Plaintiff" or "Mr. Yingling") was a 51-year-old male, born June 30, 1973, residing at 324 N 6th Ave, Altoona, PA 16601, in the Commonwealth of Pennsylvania.

2.      At all times relevant hereto, Plaintiff Chrissy Yingling ("Plaintiff" or "Mrs. Yingling"), was Mr. Yingling's wife.

3.      At all times relevant hereto, Mr. Yingling was an inmate housed at Blair County Prison, located in Blair County, Pennsylvania, where he was serving a 90-day sentence. As a pretrial detainee and/or sentenced prisoner, Mr. Yingling was in the custody and care of Blair County Prison and its employees, agents, and contracted medical providers.

4.      At all times relevant hereto, Defendants were responsible for providing adequate medical care to inmates at Blair County Prison, including but not limited to evaluation, diagnosis, and treatment of acute medical conditions, and for ensuring timely referral to appropriate medical facilities when the level of care required exceeded that available within the prison setting.

5.      Defendant Blair County is a Municipality in Pennsylvania, which owns and operates the Blair County Prison ("BCP"), located at 419 Market Square Aly, Hollidaysburg, PA 16648.

6.      Defendant PrimeCare Medical, Inc. ("PrimeCare") is a subcontractor of Defendant Blair County, doing business at 419 Market Square Aly, Hollidaysburg, PA 16648.

7.      Defendant John Doe Medical Director is and was at all times relevant to this action the Medical Director at BCP. Defendant is being sued in their individual and official capacity. Doe was at all relevant times a policymaker with respect to customs, practices, policies, and procedures at BCP. Doe was personally involved in Plaintiff's medical treatment.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

8.      Defendants John Doe Medical Providers were working as medical professionals at all times relevant to the instant matter, and regularly conducted business at 419 Market Square Aly, Hollidaysburg, PA 16648; they were all personally involved in depriving Plaintiff of needed medical care, and are all being sued in their individual capacity.

9.      Based upon information and belief, John Doe Medical Providers were employees of Defendant PrimeCare at all times relevant to the instant matter, and conduct business at 419 Market Square Aly, Hollidaysburg, PA 16648.

10.     Defendants John Doe Corrections Officers were all working as corrections officers at BCP at all times relevant to the instant matter; they are all being sued in their individual capacity and all regularly conduct business at 419 Market Square Aly, Hollidaysburg, PA 16648.

11.     At all times material hereto, Defendants acted under color of law and within the course and scope of their employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of Defendant Blair County.

## JURISDICTION AND VENUE

12.     This action is brought pursuant to 42 U.S.C. § 1983.

13.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343.

## FACTUAL BACKGROUND

14.     Plaintiffs re-allege each and every averment as set forth previously, as if the same were set forth here in full.

### A.  Plaintiff's Pre-Existing Medical Condition and Baseline Functioning

15.     Prior to his incarceration at Blair County Prison, Mr. Yingling maintained an active and

3

independent lifestyle. He was employed, working over 40 hours per week, and was fully independent in all activities of daily living, including ambulation, self-care, transfers, and mobility.

16. Mr. Yingling's pre-existing medical history included hypertension, hyperlipidemia, hypothyroidism, anxiety and depression, and obstructive sleep apnea managed with CPAP.

17. Despite his pre-existing conditions, Mr. Yingling was a fully functional, independent adult prior to his incarceration. His rehabilitation physician at Encompass Health would later describe him as "previously a fully independent 51-year-old who is relatively healthy."

## B. Onset of Symptoms and Denial of Medical Care at Blair County Prison

18. On or about April 14, 2025, while incarcerated at Blair County Prison, Mr. Yingling began experiencing symptoms of respiratory illness, including shortness of breath, congestion, significant cough, and sputum production.

19. Mr. Yingling repeatedly requested medical attention from prison staff and medical personnel for his worsening respiratory symptoms. Despite these repeated requests, his pleas for medical care were not adequately addressed.

20. Rather than being fully evaluated by a physician, nurse practitioner, or other qualified medical provider, Mr. Yingling was provided only over-the-counter Mucinex by medical staff. He was not fully examined by a medical provider, was not given a chest X-ray or any diagnostic workup, and was not prescribed antibiotics or any other treatment for what was a progressively worsening respiratory infection.

21. Mr. Yingling's symptoms continued to worsen over the course of approximately two weeks without meaningful medical intervention. During this period, a treatable bacterial infection was

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

permitted to progress unchecked into a life-threatening, multi-organ medical emergency.

22. On or about April 28, 2025, Mr. Yingling's condition had deteriorated to the point that he was finally transferred from Blair County Prison to UPMC Altoona Hospital.

### C. Emergency Admission to UPMC Altoona Hospital

23. Upon arrival at UPMC Altoona Hospital on April 28, 2025, Mr. Yingling presented with shortness of breath, tachycardia, and hypotension, consistent with severe sepsis and septic shock.

24. Mr. Yingling's respiratory status deteriorated rapidly, and he was intubated in the emergency department due to acute hypoxic respiratory failure. He was unable to breathe on his own and required mechanical ventilation to sustain his life.

25. A CT angiography of the chest with contrast performed on April 28, 2025, revealed extensive multifocal mass-like consolidation involving all lobes of both lungs. The radiologist noted the findings favored severe multifocal pneumonia and infection, and the consolidation was so extensive and mass-like in character that malignancy could not be excluded from the differential diagnosis without further evaluation. No pulmonary embolism was identified.

26. Serial chest X-rays obtained on April 28, 29, and 30, 2025, consistently demonstrated extensive bilateral airspace opacities consistent with pneumonia. One study noted cardiomegaly.

27. Initial laboratory work revealed a creatinine level of 5.0 mg/dL, consistent with acute kidney injury (normal creatinine is approximately 0.7–1.3 mg/dL). Elevated liver enzymes were also identified, indicating multi-organ compromise.

28. Mr. Yingling was admitted to the intensive care unit with diagnoses of severe sepsis and acute hypoxic respiratory failure secondary to bilateral pneumonia. He was started on broad-

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

spectrum intravenous antibiotics including vancomycin, cefepime, and azithromycin.

### D.  Prolonged ICU Course and Life-Threatening Complications

29.    Mr. Yingling remained in the intensive care unit for approximately 34 days, from April 28, 2025, through June 1, 2025, during which time he suffered a cascade of life-threatening complications directly attributable to the severity of his untreated infection upon admission.

30.    On or about May 2, 2025, Mr. Yingling developed a right-sided tension pneumothorax, a potentially fatal condition in which air accumulates in the chest cavity and compresses the lung and heart. Emergency chest tube placement was required.

31.    On or about May 4, 2025, Mr. Yingling developed a left pneumothorax, requiring placement of an additional pigtail catheter by interventional radiology.

32.    A bronchoscopy performed on or about May 8, 2025, revealed copious green purulent material and severe inflammation of the bronchial mucosa. Bronchoalveolar lavage cultures grew methicillin-sensitive Staphylococcus aureus (MSSA), confirming the diagnosis of necrotizing MSSA pneumonia.

33.    Mr. Yingling was extubated on or about May 10, 2025, but his respiratory function was insufficient to sustain independent breathing. He was reintubated on May 11, 2025, due to respiratory distress and inability to clear secretions.

34.    On or about May 12, 2025, while on a heparin infusion for atrial fibrillation, Mr. Yingling's hemoglobin and hematocrit trended downward. A CT scan of the chest revealed a left-sided hemothorax (blood accumulation in the chest cavity). He required transfusion of packed red blood cells and placement of an additional drainage catheter by interventional radiology.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

35.    On or about May 13, 2025, due to Mr. Yingling's prolonged dependence on mechanical ventilation and inability to maintain adequate oral nutrition, he underwent surgical placement of a tracheostomy and percutaneous endoscopic gastrostomy (PEG) tube.

36.    On or about May 14, 2025, Mr. Yingling developed worsening acute renal failure secondary to acute tubular necrosis from septic shock. Hemodialysis was initiated to sustain his kidney function.

37.    On or about May 22, 2025, Mr. Yingling developed recurrent loculated pleural effusions, requiring placement of bilateral pigtail catheters by interventional radiology and administration of intrapleural tissue plasminogen activator (tPA) and dornase alfa.

38.    Throughout his hospitalization, Mr. Yingling required multiple transfusions of packed red blood cells due to acute blood loss anemia. He suffered paroxysmal atrial fibrillation. He was diagnosed with moderate to severe protein calorie malnutrition. He developed dysphagia requiring PEG tube feeding.

39.    A PICC line was placed on or about May 15, 2025, for administration of long-term intravenous antibiotics. Mr. Yingling was prescribed a six-week course of IV cefazolin and metronidazole, with the final day of treatment scheduled for June 26, 2025.

40.    Mr. Yingling's tracheostomy was eventually decannulated on or about June 15, 2025. His renal function gradually recovered (creatinine improved from 5.0 to 0.6 mg/dL). He was transferred out of the ICU on June 1, 2025, and ultimately transferred to inpatient rehabilitation on June 18, 2025, after approximately 52 days of acute hospitalization.

E.  **Inpatient Rehabilitation at Encompass Health**

7

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

41.    On June 18, 2025, Mr. Yingling was transferred to Encompass Health Rehabilitation Hospital of Nittany Valley in Pleasant Gap, Pennsylvania, for intensive inpatient rehabilitation.

42.    At the time of his rehabilitation admission, Mr. Yingling's functional status had been devastated. Where he had previously been fully independent in all activities of daily living, he was now dependent for basic ADLs including eating, dressing, and bathing; dependent for all transfers and mobility; and had lost at least 20 pounds of muscle mass in his arms and legs. He weighed 147 pounds. His rehabilitation diagnoses included critical illness neuropathy and critical illness myopathy, conditions resulting directly from his prolonged ICU stay and critical illness.

43.    Mr. Yingling received intensive physical and occupational therapy at a rate of three hours per day, five days per week, along with 24-hour rehabilitation nursing care. He continued to receive intravenous antibiotics via PICC line through June 26, 2025, and received supplemental PEG tube feedings at night.

44.    Mr. Yingling made significant progress during his 17-day rehabilitation stay and was discharged home on July 5, 2025, in improved and medically stable condition. At discharge, he was ambulatory with a rolling walker and wore an ankle-foot orthosis (AFO) brace for left foot drop. He was discharged with orders for outpatient physical and occupational therapy, home health nursing, and durable medical equipment including a four-wheeled walker with seat and a cane. His PEG tube remained in place pending follow-up with the surgeon.

### F.  Post-Discharge Follow-Up and Ongoing Condition

45.    On July 18, 2025, Mr. Yingling was evaluated by Gerald B. Belopolsky, M.D., at UPMC Blair Medical Associates for pulmonology follow-up. Mr. Yingling reported overall improvement

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

but continued to experience persistent cough, shortness of breath on exertion, and constant nerve pain managed with gabapentin. Physical examination revealed mild bilateral lower extremity edema and an abnormal gait. He was ambulating with a walker. His weight was 140 pounds. Laboratory work showed persistent anemia with a hemoglobin of 9.9 g/dL. A follow-up CT of the chest without contrast was ordered to assess lung healing. His PEG tube remained in place but was no longer being used, as the patient was tolerating a regular diet by mouth.

46.     On July 24, 2025, Mr. Yingling was evaluated by Alyssa Martyak, PAC, at Blair Gastroenterology Associates for possible PEG tube removal. He reported feeling well, with good appetite and weight gain. The PEG tube had not been used since the end of June. He was referred back to the surgeon who placed the PEG for removal.

47.     Due to his prolonged critical illness, Mr. Yingling has suffered tremendously and has needed substantial care, including: critical illness neuropathy and myopathy requiring extensive physical and occupational therapy; left foot drop requiring an AFO brace; dependence on a rolling walker for ambulation; chronic nerve pain requiring medication management; residual pulmonary disease with persistent cough and exertional dyspnea; deconditioning and muscle wasting; and the psychological and emotional effects of his prolonged hospitalization and functional decline.

48.     Although Mr. Yingling's lung functioning has improved, the nerve damage in his leg is permanent; he cannot walk without assistance or without pain, and for the rest of his life will have to rely on braces, a cane, a walker, and/or a scooter to move around.

49.     Mr. Yingling also continues to suffer headaches, vertigo, and brain fog, symptoms for which he has seen specialists but has not been able to obtain any relief.

50.     Mr. and Mrs. Yingling's lives have been devastated by this incident.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

51.    Both Plaintiffs have always worked two jobs; Mr. Yingling, who was preparing to start his own handyman business before this incident, is now unable to work, and Mrs. Yingling has had to take significant unpaid leave to take care of her husband during this period.

52.    Before Mr. Yingling's untreated illness led to his permanent disability, he handled all of their household maintenance and repair needs. In the decades before this incident, Mrs. Yingling never paid for car repairs, roof installation, lawncare, etc., because Mr. Yingling proudly took care of their home; now, Mrs. Yingling has to pay outside workers to handle lawncare, small repairs, and other basic household tasks.

53.    Additionally, Mr. and Mrs. Yingling's sex life has been severely diminished due to Mr. Yingling's constant pain and medication side effects.

### G. Causation

54.    Mr. Yingling's catastrophic medical course and resulting injuries were directly and proximately caused by the failure of Defendants to provide timely and adequate medical care during his incarceration at Blair County Prison.

55.    MSSA (methicillin-sensitive Staphylococcus aureus) is not a drug-resistant organism. It is susceptible to common, readily available antibiotics. Had Mr. Yingling been evaluated by a medical provider when he first reported respiratory symptoms—approximately two weeks before his transfer to UPMC Altoona—the standard of care would have included a physical examination, diagnostic workup (including chest X-ray and basic laboratory studies), and initiation of appropriate antibiotic therapy.

56.    With timely diagnosis and treatment, Mr. Yingling's bacterial pneumonia would have been

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

identified and treated at an early, manageable stage, before it progressed to the necrotizing, multi-lobar, life-threatening infection that ultimately required 52 days of hospitalization, prolonged ICU care, mechanical ventilation, tracheostomy, PEG tube placement, dialysis, multiple invasive procedures, and months of rehabilitation.

57.    The approximately two-week delay in providing any meaningful medical evaluation or treatment permitted a treatable respiratory infection to progress to necrotizing MSSA pneumonia with septic shock, multi-organ failure, and a cascade of secondary complications that have left Mr. Yingling with permanent and ongoing injuries and functional limitations.

58.    Mr. Yingling's treating rehabilitation physician at Encompass Health noted that Mr. Yingling was "previously a fully independent 51-year-old who is relatively healthy." While Mr. Yingling's history of alcohol and tobacco use may have been predisposing risk factors for developing pneumonia, these pre-existing conditions do not excuse the failure to provide timely medical evaluation and treatment. A patient with known risk factors for respiratory infection who presents with worsening respiratory symptoms requires more urgent attention, not less.

### H.   Prior Litigation Involving Medical Deprivation at Blair County Prison *(Notice and Pattern of Deliberate Indifference)*

59.    Blair County Prison has been the subject of numerous federal civil rights lawsuits alleging deliberate indifference to inmates' serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The following cases, filed over the past twelve years, demonstrate a pattern and practice of constitutionally deficient medical care at the Blair County Prison that was known or should have been known to Defendants at the time of the events giving rise to Plaintiff's claims.

60.    Medical care at Blair County Prison is provided by PrimeCare Medical, Inc.

11

("PrimeCare"), a private contractor headquartered in Harrisburg, Pennsylvania. PrimeCare has been named as a defendant in multiple federal civil rights actions arising from its provision of medical services at the facility.

a.      Aughenbaugh v. Blair County, et al., No. 3:09-cv-00159-KRG (W.D. Pa.) (filed 2009; settled 2013). The estate of Nathan Aughenbaugh, a 27-year-old inmate from Clearfield County, filed a federal civil rights lawsuit after Mr. Aughenbaugh was found dead by hanging in the Blair County Prison on June 28, 2007. The complaint named Blair County, prison staff, Dr. Jerome DeJulia, Tyrone Medical Associates, and PrimeCare Medical, Inc. as defendants. The plaintiff alleged that prison medical staff and PrimeCare were deliberately indifferent to Mr. Aughenbaugh's serious mental health needs and that the decedent had been over-medicated. Experts presented during the litigation noted that PrimeCare's suicide prevention policy regarding Level III monitoring, which called for 30-minute checks on suicidal inmates, fell below accepted national standards. All defendants denied negligence and deliberate indifference. The case was settled in 2013 on the eve of trial after failed mediation attempts .

b.      Beckwith v. Blair County, et al., No. 3:18-cv-00040 (W.D. Pa.) (filed 2018; dismissed/settled 2022). The estate of Samantha Beckwith, a 23-year-old mother of two who was found unresponsive in her cell on October 24, 2016, filed a federal civil rights lawsuit against Blair County, the Blair County Prison, prison officials, and PrimeCare Medical, Inc. The complaint alleged that Defendants were deliberately indifferent to Ms. Beckwith's serious mental health needs, despite having knowledge of her "complex mental health history" and high suicide risk. Ms. Beckwith had been an inmate at the Blair County

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

Prison on ten separate occasions between May 2012 and March 2016 and had been placed on suicide watch seven times during those incarcerations. The lawsuit alleged that prison staff failed to provide prescribed psychiatric medications and that the prison lacked adequate policies for communication between correctional and medical staff regarding inmates on suicide watch. U.S. District Judge Kim R. Gibson denied motions to dismiss filed by both Blair County and PrimeCare. Judge Stephanie L. Haines subsequently found sufficient evidence by which a reasonable juror could conclude that the county defendants maintained a deficient policy that permitted corrections officers to remove inmates from suicide watch without a mental health evaluation. The case was ultimately resolved and dismissed by agreement of the parties in April 2022.

c.      Meyer v. Blair County Prison Officials, et al., No. 3:25-cv-00328 (W.D. Pa.) (filed October 1, 2025). Inmate Donald Earl Meyer of Clearfield filed a class action petition on behalf of himself and other similarly situated inmates, describing conditions at Blair County Prison as "cruel and unusual punishment." The complaint named as defendants several prison officials, including a former warden, corrections officers, two Blair County judges, members of the Blair County Prison Board, and members of the District Attorney's staff. The petition alleged, among other things, that inmates were subjected to overcrowded conditions with inadequate medical care, that the facility contained black mold, and that food portions were insufficient. At least ten inmates signed on as plaintiffs. The case was referred to Magistrate Judge Keith A. Pesto in Johnstown for review. Additional inmates subsequently filed motions to join the class action.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

d.      <u>Feather v. PrimeCare Medical, Inc., et al.</u>, No. 3:25-cv-550 (W.D. Pa.) (filed 2025). Inmate Michael Lynn Feather Jr. filed a federal civil rights complaint against PrimeCare Medical, Inc., Blair County Prison, and UPMC Altoona, alleging that he had serious health problems that were not being addressed despite repeated requests for medical care. Mr. Feather had been incarcerated since July 22, 2025. The case was filed in the United States District Court for the Western District of Pennsylvania.

e.      <u>Evans v. Blair County Prison</u>, No. 3:26-cv-00338 (W.D. Pa.) (filed 2026). Inmate Willie Lee Evans Jr. filed a federal civil rights complaint alleging that approximately 49 inmates were housed in the prison gymnasium with only one bathroom and one shower, that the area contained black mold, and that these conditions were causing him breathing and heart-related issues. The complaint alleged that the overcrowded and unsanitary conditions constituted cruel and unusual punishment in violation of the Eighth Amendment. The case was filed in the United States District Court for the Western District of Pennsylvania.

f.      <u>Horner v. Blair County Prison, et al.</u>, No. 3:25-cv-526 (W.D. Pa.) (filed December 2025). Inmate Amanda Marie Horner filed a federal civil rights lawsuit alleging that Blair County Prison officials and PrimeCare Medical, Inc. failed to provide adequate medical care during her high-risk pregnancy, resulting in the miscarriage of twins. Ms. Horner, who had been arrested in March 2025 on drug-related charges and incarcerated since April 3, 2025, alleged that she informed medical staff upon arrival that she was pregnant and at high risk due to prior complications. She further alleged that she repeatedly reported bleeding, cramping, and pain over several weeks, but her requests for medical care were

14

delayed or ignored despite multiple sick call requests and grievances. Ms. Horner alleged that she ultimately suffered a miscarriage on a toilet and a second miscarriage in the shower while incarcerated. The complaint named Blair County Prison staff, three deputy wardens, a lieutenant, a sergeant, and PrimeCare Medical, Inc. as defendants, and sought $1 million in damages and changes to jail medical policies.

g.     Walker v. Blair County Prison, No. 3:26-cv-00384 (W.D. Pa.) (filed 2026). An additional inmate filed a federal civil rights complaint against Blair County Prison alleging unconstitutional conditions of confinement, including inadequate medical care. The case was filed in the United States District Court for the Western District of Pennsylvania and is classified as a Prisoner Civil Rights action.

61.     The foregoing cases demonstrate that Blair County and PrimeCare Medical, Inc. have been on notice for over a decade that inmates at Blair County Prison have suffered serious harm as a result of constitutionally deficient medical care. Despite this notice, and despite the resolution of prior lawsuits that should have prompted systemic reform, the pattern of deliberate indifference to inmates' serious medical needs has continued unabated.

62.     At the time of the events giving rise to Plaintiff's claims, Blair County and its contracted medical provider had actual knowledge—through repeated litigation, settlements, and judicial findings—that their policies, customs, and practices regarding inmate medical care were constitutionally deficient. The injuries suffered by Mr. Yingling were the direct and foreseeable result of this longstanding pattern of deliberate indifference.

**COUNT I: FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE
EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983
PLAINTIFF EDWIN YINGLING V. ALL DEFENDANTS**

15

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

63.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

64.     Plaintiff repeatedly complained of severe pain.

65.     Defendants did not properly investigate or treat Plaintiff's medical complaints.

66.     Defendants did not properly learn the cause or condition of Plaintiff's medical complaint.

67.     Defendants did not provide Plaintiff with proper medical care.

68.     Defendants failed to protect Plaintiff's physical well-being.

69.     Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being ignored Plaintiff's complaints of physical pain.

70.     Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being ignored Plaintiff's obvious need for medical treatment and evaluation.

71.     Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being denied Plaintiff medical care.

72.     Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being failed to ensure that Plaintiff received prompt medical attention.

73.     Defendants acted deliberately, recklessly, and with a conscious disregard of the obvious risk that Plaintiff had a serious medical issue.

74.     Defendants' actions caused Plaintiff to needlessly suffer, served no penological purpose, and caused him immense pain; their conduct eventually caused Plaintiff to need a far more invasive surgery that resulted in a permanent injury.

75.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered injury, immense physical pain, humiliation, and fear.

16

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, attorney's fees, and allowable costs of suit and brings this action to recover the same. Plaintiff is not seeking punitive damages against the Municipality.

**COUNT II:  SUPERVISOR LIABILITY**
**EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF EDWARD YINGLING V. DEFENDANT DOE MEDICAL DIRECTOR**

76.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

77.    Defendant Doe Medical Director was deliberately indifferent to the needs of inmates being held at the BCP.

78.    Upon information and belief, Defendant was aware that certain policies and customs posed a grave danger to inmates detained in the Prison, including Plaintiff.

79.    Defendant maintained a policy of staffing the BCP with inadequate medical providers.

80.    Defendant did not properly refer Plaintiff to a physician to treat his complaints of pain.

81.    Defendant did nothing to implement corrective policy or customs, despite knowing that existing policies posed a serious danger to inmates and pretrial detainees, including Plaintiff.

82.    Defendant was deliberately indifferent to the well-being of the inmates detained in the BCP, including Plaintiff.

83.    Defendant knew of his supervisory failures and knew that ill detainees were not receiving adequate treatment, but Defendant deliberately failed to correct the problem.

84.    Defendant was aware of a substantial risk that ill detainees would not receive proper medical care.

17

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

85.     Defendant was deliberately indifferent to the consequences of their established policies and customs.

86.     Defendant's establishment and maintenance of the above-mentioned policies and customs directly caused Plaintiff to be deprived of his constitutional rights.

87.     As a direct and proximate result of Defendant's deliberate indifference, Plaintiff suffered immense physical pain, humiliation, fear, and physical injuries.

88.     Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which he has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover the same.

## COUNT III: MUNICIPAL LIABILITY – PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFF EDWIN YINGLING V. DEFENDANTS BLAIR COUNTY and PRIMECARE

89.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

90.     Defendants Blair County and PrimeCare promulgated and maintained policies and customs, as pled at length above, that were the moving force that caused Plaintiff's constitutional and statutory rights to be violated.

91.     Defendants Blair County and PrimeCare failed to adhere to protocol in detecting and safeguarding inmates who made medical complaints.

92.     Defendants Blair County and PrimeCare maintained a policy of not staffing the facility with the proper doctors and medical staff to treat the medical needs of inmates.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

93.    Defendants Blair County and PrimeCare maintained a policy of not having a medical provider properly examine inmates complaining of pain.

94.    All of the pled policies and customs were implemented before, during, and after Plaintiff's detention at the Correctional Facility.

95.    Defendants Blair County and PrimeCare knew of the dangers posed by these policies and customs.

96.    Specifically, Defendants Blair County and PrimeCare were fully aware prior to the time period of Plaintiff's incarceration of the serious and extreme danger posed by not properly providing medical care to inmates.

97.    Despite this prior knowledge, Defendants Blair County and PrimeCare took no steps to enact proper policies to remedy the problematic policies and customs.

98.    Had Defendants Blair County and PrimeCare properly promulgated appropriate protocol, not had an improper custom, or adequately trained and/or supervised the individual Defendants, Plaintiff would have received appropriate care and supervision.

99.    Defendants Blair County and PrimeCare were deliberately indifferent to Plaintiff's constitutional rights.

100.    Defendants Blair County and PrimeCare's policies and customs were a direct and proximate cause of Plaintiff's injuries and damages.

101.    As a direct and proximate result of Defendants Blair County and PrimeCare's policies and customs, Plaintiff suffered immense physical pain, humiliation, fear, and physical injuries.

102.    Plaintiff also makes a claim for such injuries, damages, and consequences resulting from the incident of which he has no present knowledge.

19

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same. Plaintiff is not seeking punitive damages against the Municipality.

### <u>COUNT IV: VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) – PENNSYLVANIA LAW<br>PLAINTIFF EDWIN YINGLING V. DEFENDANT PRIMECARE</u>

103.  Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

104.  Defendant PrimeCare's negligence, by and through its agents, servants, and/or employees, within the course and scope of their agency and employment, was the cause of Plaintiff's damage.

105.  Upon information and belief, Defendants PrimeCare employed or hired the individual Defendants to provide medical services at the BCP on their behalf.

106.  The individual employees were providing medical services at the time of the incident during the course of and within the scope of their employment.

107.  The individual Defendants' medical services were for the purpose of benefiting PrimeCare.

108.  Plaintiff makes a claim for such injuries, damages, and consequences resulting from the individual Defendants' negligence as outlined within the instant complaint, for which PrimeCare is vicariously liable.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same.

LEVIN & ZEIGER LLP<br>1500 JFK BLVD, SUITE 620<br>PHILADELPHIA, PENNSYLVANIA 19102<br>215.546.0340

**COUNT V: MEDICAL NEGLIGENCE – PENNSYLVANIA LAW**
**PLAINTIFF EDWIN YINGLING V. DEFENDANTS PRIMECARE, MEDICAL**
**DIRECTOR DOE AND MEDICAL PROVIDERS DOE**

109.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

110.    Defendants PrimeCare and Doe owed Plaintiff a duty of care.

111.    Defendants breached the duty of care owed to Plaintiff.

112.    The negligent conduct of Defendant PrimeCare, in their role as medical provider to BCP, consists of:

   a.   failure to properly hire, train, and supervise their employees;

   b.   failure to oversee and monitor employees;

   c.   failure to implement policies and procedures to safeguard inmates;

   d.   failure to implement policies and procedures to ensure inmates were given the proper medical care; and

   e.   failure to properly provide medical care and treatment to inmates under their care.

113.    The negligent conduct of the individual Defendants, in the course and scope of their employment with either Defendant PrimeCare or Defendant Blair County, consists of the following:

   a.   negligently and recklessly ignoring Plaintiff's repeated and consistent complaints of pain;

   b.   negligently and recklessly failing to properly review medical history records to ensure that Plaintiff's medical conditions were apparent and readily known;

   c.   negligently and recklessly failing to provide appropriate medical attention to Plaintiff;

21

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

d.   negligently and recklessly failing to properly administer necessary medication to treat Plaintiff's cause, condition, and complaints of pain;

e.   negligently failing to recognize the appropriate required medical care required by Plaintiff;

f.   failure to have a proper treatment plan in place for the Plaintiff's medical needs;

g.   failure to select and retain only competent healthcare providers, including physicians, nurses, and other healthcare professionals treating Plaintiff;

h.   failure to oversee and monitor all BCP medical providers treating Plaintiff;

i.   failure to formulate, adopt, and enforce policies and procedures to ensure quality and care for patients, including policy and procedures requiring the monitoring of Plaintiff;

j.   negligently failing to properly examine and treat Plaintiff;

k.   failing to perform proper testing;

l.   failing to properly evaluate Plaintiff's medical issues and needs;

m.   failing to properly diagnosis Plaintiff's medical ailments;

n.   failing to properly refer Plaintiff to the appropriate doctor or specialist.

114.   As a direct and proximate cause of Defendants' negligence, Plaintiff experienced significant pain and suffering.

115.   As a direct and proximate cause of Defendants' negligence, Plaintiff was left with lifelong physical impairments.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

## COUNT VI: LOSS OF CONSORTIUM – PENNSYLVANIA LAW
## PLAINTIFF CHRISTIE YINGLING V. ALL DEFENDANTS

116.    The allegations set forth in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

117.    At all times material hereto, Plaintiffs Mr. and Mrs. Yingling were the lawful spouse of one another.

118.    As a direct a result of the Defendants' negligence, denial of care, and failure to protect Mr. Yingling, Mrs. Yingling has in the past and will continue in the future to be deprived of the society, comfort, companionship, help, assistance and support of her spouse, all to her great emotional, physical, and economic loss.

119.    As a direct a result of Defendants' negligence, denial of care, and failure to protect Mr. Yingling, Mrs. Yingling has suffered a loss of consortium, and therefore makes a claim against all Defendants, jointly and severally.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same.

RESPECTFULLY SUBMITTED,


March 27, 2026                         /s/Brian Zeiger
DATE                                  BRIAN ZEIGER
                                      PA ID NO. 87063

                                      /s/ Laura Zipin
                                      LAURA ZIPIN
                                      PA ID NO. 324914

                                      LEVIN & ZEIGER, LLP

23

TWO PENN CENTER
1500 JFK BLVD STE 620
PHILADELPHIA, PA 19102
215.546.0340
*zeiger@levinzeiger.com*
*zipin@levinzeiger.com*

24

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

RESPECTFULLY SUBMITTED,

March 27, 2026
DATE

/s/Brian Zeiger
BRIAN ZEIGER
PA ID NO. 87063

/s/ Laura Zipin
LAURA ZIPIN
PA ID NO. 324914

LEVIN & ZEIGER, LLP
TWO PENN CENTER
1500 JFK BLVD STE 620
PHILADELPHIA, PA 19102
215.546.0340
*zeiger@levinzeiger.com*
*zipin@levinzeiger.com*